UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ANGELA SCHUNCEY RICHARDSON                                            PLAINTIFF
ADC #712575

V.                          1:17CV00084 KGB/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction, *et al.*                           DEFENDANTS

## SUPPLEMENTAL RECOMMENDED DISPOSITION

The following Supplemental Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Angela Schuncey Richardson ("Richardson") is a prisoner in the McPherson Unit of the Arkansas Department of Correction ("ADC"). After the Court struck her initial 530-page Complaint because it violated Rules 8, 20 and 21

of the Federal Rules of Civil Procedure, she filed three *pro se* § 1983 Substituted Complaints and an Addendum alleging constitutional claims against Defendants Account Clerk Mytris Stone ("Stone") and Assistant Warden Tami Jo Aiken ("Aiken"). *Docs. 7, 12, 14, 16 & 17.* On December 21, 2017, the Court filed a Recommended Partial Disposition suggesting that all claims against Stone be dismissed. *Doc. 18, at 2-3.* The Court also suggested the dismissal of twenty other Defendants, who were named in the stricken Complaint but not in any of the Substituted Complaints.[1] *Id. at 4.*

Aiken has now filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts, arguing that the claim against her also should be dismissed because Richardson failed to exhaust the administrative remedies available at the ADC.[2] *Docs. 26, 27 & 28.* In response, Richardson filed a Statement of Disputed Facts. *Doc. 30.* Thus, the issues are joined and ready for disposition.[3]

---

[1]Wendy Kelley, Dexter Payne, D. Golden, Jenny Long, Clara Robinson, Roger Leon Ayers, Coach Spence, Sergeant Harmon, Sergeant Seymore, Angela Freeman, Maurice Culclager, Anita Rudd, Corporal Kersey, G. Cox, Chad Davis, Chris Jordan, Lieutenant Chapman, Corporal Jarrett, L. Dunavion, and Jada Lawrence.

[2]In her claim against Aiken, Richardson alleges that, on January 24, 2017, she received a Major Disciplinary from a non-party correctional officer that falsely accused her of failing to obey an order and being insolent. According to Richardson, Aiken instructed the officer to issue that wrongful Major Disciplinary to retaliate against Richardson for filing grievances and a lawsuit against her.

[3]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50

## II. Discussion

The Prison Litigation Reform Act ("PLRA") calls for prisoners to exhaust their administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014). The PLRA's demand is clear: "If administrative remedies are

---

(1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

available, the prisoner must exhaust them." *Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000); *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the exhaustion requirements of the incarcerating facility *before* filing suit.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver; (2) a "Step Two" formal grievance raising that claim; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director. *Doc. 28, Ex. A at 5-13* (ADC Adm. Dir. 14-16 § IV(E) through (G)). The ADC's exhaustion policy requires that, in connection with each claim, an inmate must "*specifically name each individual involved*," and the grievance forms themselves repeat these instructions to ensure prisoners are aware of them. *Id., Ex. A at 4* (§ IV(C)(4)); *Doc. 12, at 8.* The ADC's exhaustion policy cautions prisoners: "Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court … for failure to exhaust against all parties." *Doc. 28, Ex. A at 5* (§ IV(C)(4)).

Finally, while matters related to disciplinaries are "non-grievable" through the ADC grievance procedure, the policy *expressly* allows grievances regarding "claims

4

of retaliation, even if related to a [non-grievable] issue," such as a disciplinary charge. *Id., Ex. A at 2-3* (§ III(G)).

On January 24, 2017, the day of the incident giving rise to the allegedly retaliatory disciplinary, Richardson submitted Grievance MCP17-00115, alleging that Defendant Stone had displayed "unprofessional staff misconduct," and cursed and threatened her.[4] *Doc. 12, at 8.* A non-party warden responded, stating that, because "appropriate action" had been taken against the officer, Richardson's grievance was "with merit but already resolved." *Id. at 9.* Richardson appealed, alleging that she had received a "retaliatory disciplinary" stemming from the January 24, 2017 incident. *Id.* Her appeal was determined to be without merit. *Id. at 10.* Thus, nothing in Grievance MCP17-00115 has anything to do with the retaliatory disciplinary claim Richardson is now asserting against Aiken.[5]

According to ADC records, Richardson has *never* filed a grievance against Aiken regarding her allegedly retaliatory actions on January 24, 2017.[6] *Doc. 28, Ex.*

---

[4]The Court has previously recommended that Richardson's claim against Stone be dismissed for failure to state an actionable § 1983 claim. *Doc. 18, at 2-3.*

[5]Grievance MCP17-00115 does *not* name Aiken, identify her by position or other description, or indicate in any way that Aiken was responsible for Richardson's receiving a "retaliatory" disciplinary connected to the January 24,1017 incident.

[6]Aiken's Motion for Summary Judgment is supported by a sworn "Declaration" from Rose Higgins, Inmate Grievance Coordinator at the ADC's McPherson Unit. *Doc. 28, Ex. B.* While Richardson asserts that Higgins's Declaration is not "accurate," because it contains inconsistencies, none of the alleged inconsistencies are relevant or material to resolution of the exhaustion issues before the Court. *See Doc. 30, at 1-2, 5-6.*

*B ¶ 21* (Higgins Aff. ). Richardson did, however, file grievances against Aiken, after that date, accusing her of retaliatory behavior *unrelated* to the claim raised in this § 1983 action. *Id. ¶ 22*. ADC records also show that, during Richardson's incarceration, she has written a "large number" of grievances against various staff members alleging retaliation. *Id. ¶ 20*.

Because Richardson did not file any grievances identifying Aiken and claiming she was involved in the issuance of the allegedly retaliatory disciplinary against Richardson on January 24, 2017, the ADC did *not* reach or decide the merits of the retaliatory disciplinary claim that Richardson is now asserting against Aiken, *for the first time,* in this § 1983 action. *See Jones,* 549 U.S. at 219-20 (explaining that one of the purposes of the PLRA is to permit "a prison to address complaints about the program it administers before being subjected to suit"; where prisoner has failed to administratively exhaust "some, but not all," of the claims asserted in his § 1983 action, the court "should proceed with the exhausted claims," but "no unexhausted claim may be considered"); *Burns,* 752 F.3d at 1141-42 (affirming dismissal for non-exhaustion where the claims a prisoner raised through the prison's exhaustion procedure were different from the "distinct § 1983 claims" he raised in his federal lawsuit).

Richardson does not dispute that, before filing this § 1983 lawsuit, she failed to file a separate grievance alleging that Aiken was responsible for the allegedly

6

retaliatory disciplinary on January 24, 2017. Rather, she contends that, through Grievance MCP17-00115 and the ADC disciplinary proceedings, she exhausted her ADC remedies "on the incident at hand," which should be sufficient because "it all stemmed from the 01/24/17 incident." *Doc. 30, at 3-5*. She points out that, after a non-party correctional officer wrote the Major Disciplinary for Richardson's conduct during the January 24, 2017 incident, Aiken "approved" the charge and referred the matter to the disciplinary committee for a hearing. Richardson further alleges that, during the disciplinary hearing, she "expressed her retaliatory disciplinary issues" to the hearing officer, who ultimately dismissed the charge. *Id. at 4-5; see Doc. 17, at 2-6*.

As discussed, Grievance MCP17-00115 was insufficient to exhaust Richardson's retaliation claim against Aiken because it did not name or otherwise identify her, or describe her alleged role in the issuance of a retaliatory disciplinary. Furthermore, the documents reflecting what took place during Richardson's disciplinary proceedings do *not* support her contention that she identified Aiken as being responsible for the "retaliatory" disciplinary. *Doc. 17, at 4*. Finally, even if Richardson did identify Aiken during the disciplinary proceeding and explain her alleged role in the issuance of the retaliatory disciplinary, Richardson did *not* appeal the disciplinary hearing officer's decision.[7] *Id. at 5*. Thus, she unquestionably failed

---

[7]To satisfy the PLRA, a prisoner must properly complete *all stages* of the prison's grievance

to properly exhaust the disciplinary process regarding her retaliatory disciplinary claim against Aiken.

In *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), the Court clarified that the PLRA's exhaustion requirement contains no "judge-made" exceptions, such as good cause. Instead, a prisoner must properly exhaust all "available" remedies, which the Court narrowly defined as all remedies that are "capable of use."[8] *Id.* at 1858. Clearly, the ADC grievance procedure was "available" to Richardson, as evidenced by her ability to file numerous grievances during her ADC incarceration, including several *unrelated grievances* against Aiken, and including a grievance about another officer on the very day that Aiken allegedly ordered the issuance of a "retaliatory" disciplinary. *See Trevino v. Woodbury County Jail,* 623 Fed. Appx. 824, 825 (8th Cir. 2015) (record belied prisoner's assertion that jail officials prevented him from using its grievance procedures, where he filed eleven written complaints while there and presented no evidence that any official thwarted his efforts to file more);

---

procedure even if he or she obtains a favorable ruling in an intermediate stage. *See Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) (finding incomplete exhaustion when a prisoner failed to appeal the warden's favorable ruling on his grievance and pursue the "grievance process to its final stage"); *King v. Iowa Dept. of Corr.*, 598 F.3d 1051, 1052-53 (8th Cir. 2010) (finding incomplete exhaustion when a prisoner failed to appeal a favorable ruling on this grievance).

[8]The Court went on to emphasize that administrative remedies are "unavailable" only under three limited circumstances which "will not often arise": (1) when the process cannot be completed because it is a "dead end," with prison officials "unable or consistently unwilling" to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison officials thwart the inmate through "machination, misrepresentation, or intimidation." *Id.* at 1859-60. None of those exceptions apply here.

*Hammett v. Cofield,* 681 F.3d 945, 948-49 (8th Cir. 2012) (prisoner=s previous use of grievance procedures demonstrated that he understood the process and that prison officials were responding to his "many grievances and grievance appeals").

The Eighth Circuit has held that a prisoner's subjective and possibly incorrect understanding of the prison's grievance process is irrelevant to the determination of whether administrative remedies were "available" to him. *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002); *Chelette*, 229 F.3d at 688. Importantly, that holding applies even if prison officials gave inmates incorrect information about how to properly use the prison's grievance procedure. *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (holding that administrative remedies were "available" even when prison officials incorrectly told inmates that they did not need to file written grievances).

The Court concludes that Aiken is entitled to summary judgment on Richardson's claim against her, and that the claim should be dismissed, without prejudice, for failure to exhaust administrative remedies. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Tami Jo Aiken's Motion for Summary Judgment *(Doc. 26)* be GRANTED.

2. Richardson's § 1983 claim against Aiken be DISMISSED, WITHOUT PREJUDICE, for failure to exhaust administrative remedies.

3. If the pending Recommended Partial Disposition of all claims against Defendants Mytris Stone, Wendy Kelley, Dexter Payne, D. Golden, Jenny Long, Clara Robinson, Roger Leon Ayers, Coach Spence, Sergeant Harmon, Sergeant Seymore, Angela Freeman, Maurice Culclager, Anita Rudd, Corporal Kersey, G. Cox, Chad Davis, Chris Jordan, Lieutenant Chapman, Corporal Jarrett, L. Dunavion and Jada Lawrence *(Doc. 18)*, is approved *and* this Supplemental Recommended Disposition is approved, then this § 1983 action should be DISMISSED IN ITS ENTIRETY.

DATED this 11th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE